H HN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 CR 786-2 |
| v. ) | |
| ) | Judge John W. Darrah |
| ARMANDO GARZA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On October 2, 2007, after a one-week jury trial, Defendant Armando Garza was convicted on counts of conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c) (Count I); attempted kidnapping, in violation of 18 U.S.C. § 1201(a)(1) and (d) (Count II); and conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(e) (Count III).

### BACKGROUND

This case originated when the FBI seized 45 kilograms of cocaine belonging to Luis Vasquez from a stash house owned by Jose Jimenez. Vasquez had provided the cocaine to Jimenez on credit immediately before it was seized. In order to repay the resulting debt, Jimenez promised to transfer ownership of a restaurant owned by his sister and brother-in-law (Victims A and B in this case) to Vasquez. Vasquez was subsequently arrested and convicted. Victims A and B testified at his trial. Garza and his codefendant, Saul Sanchez, agreed to kidnap Victims A and B and transport them to Mexico in retaliation for their testimony against Vasquez. Sanchez and Garza were arrested after a cooperating witness ("CW"), whom Sanchez has approached for assistance in the kidnapping, contacted law enforcement.

## ANALYSIS

Garza raises several objections to the Presentence Investigation Report ("PSI") and the Government's version of the offense.

Garza argues that he is entitled to a three-level reduction in his offense level, pursuant to Guideline 2X1.1(b) because Defendants were "not even close" to completing all the acts they believed necessary for the successful completion of the substantive offense. Guideline 2X1.1(b) calls for a three-level reduction "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. §2X1.1.(b). The evidence introduced at trial showed that Defendants were about to complete all acts necessary to carry out the kidnapping but for the intervention of law enforcement. In addition to the van procured by Defendants, the evidence showed that Defendants had a ranch just off the highway in Joliet where they planned to take the victims before transporting them to Mexico. The evidence also showed that Sanchez had traveled twice to Mexico in the weeks before his arrest to make preparations for the kidnapping. Defendants had most, if not all, of the tools they would need in place to effect the kidnapping. Thus, Garza is not entitled to the three-level reduction.

Garza next objects to the determination in the PSI that, pursuant to §2A4.1(b)(7)(B), the offense level should be increased to 38 because the kidnapping conspiracy was related to the seizure of 45 kilograms of cocaine. Section 2A4.1(b)(7)(B) provides that "[i]f the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense," the offense level shall be "4 plus the offense level from the offense guideline

2

applicable to that other offense, but in no event greater than level 43, in any other case." The Government argues that this case is connected to the 45 kilograms of cocaine seized from Vasquez because the kidnapping conspiracy had its origins and motive in that seizure. This argument has already been rejected in the case of Garza's codefendant, Sanchez. In sentencing Sanchez, the Court held that there was insufficient evidence to link the kidnapping conspiracy to the conspiracy to distribute the 45 kilograms of cocaine. While there was evidence that Sanchez believed himself to be acting on behalf of Vasquez in planning the kidnapping, the evidence was too vague to show more than a tenuous link to the drug conspiracy. Specifically, there was no showing that the planned kidnapping would in any way serve to cover up or further enable the drug conspiracy. This analysis applies to Garza and his link with the drug conspiracy is even more tenuous. Thus, the offense level remains 32.

Garza next objects to the PSI's conclusion that he should be sentenced as a career offender under Guideline 4B1.1. However, Garza qualifies as a career offender because he was convicted of two controlled-substance offenses and was sentenced on two separate days. Even if Garza prevailed on his argument that the Court should consider both sentencings to have occurred on the same day, there was still an intervening arrest between the offenses, and, thus, they must be counted as two different sentences under Guideline 4A1.2(a)(2). Garza, citing *United States v. Glover*, 479 F.3d 511 (7th Cir. 2007) (*Glover*), argues that the Court has discretion not to classify him as a career offender and that the designation overstates the seriousness of his criminal history. However, *Glover* stresses that career offender rules pose legal rather than factual issues. *Glover*, 479 F.3d at 522. Here, as a legal matter, Garza falls

squarely within the definition of a career offender. However, the Court vacates its previous finding of June 25, 2008, that the Court does not have discretion to reach the opposite conclusion. *See United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008).

Finally, Garza argues that he is entitled to a decrease of at least three or four levels under Guidelines 3B1.2 because he was a minor participant in the criminal activity. The evidence introduced at trial supports Garza's position. The evidence showed that Garza's primary role in the criminal activity was as a driver for Sanchez. Garza's participation in conversations between Sanchez and the CW was minimal at most. There was no testimony that connected Garza to the CW, to Vasquez, or to any others involved in the Vasquez drug conspiracy. The PSI found, and the Court agrees, that Sanchez was the more culpable of the two Defendants in this case. In sentencing codefendant Sanchez, the Court found that codefendant Sanchez was deserving of a two-level increase as an organizer, leader, manager or supervisor in this criminal activity. This finding recognized that it was Sanchez who was the driving force behind the kidnapping conspiracy. Garza, by contrast, was merely brought on as help. Thus, because of his minor participation in the initiation and planning of the kidnapping, Garza is entitled to a two-point reduction under Guideline 3B1.2(b).

However, regardless of the above calculations, under Guideline 4B1.1(b), as a career offender convicted of a crime with a statutory maximum of life imprisonment, Garza's offense level is 37. Under the same Guideline, Garza's criminal history is Category VI. The Guideline range is therefore 360 months to life.

"[A] district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall v. United States*, 128 S.Ct. 586, 594 (2007)(*Gall*). However, requiring "extraordinary circumstances" to justify a sentence outside the Guidelines range or mandating the use of "a rigid mathematical formula" comes "too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Gall*, 128 S.Ct. at 595. A court should "impose a sentence sufficient, *but not greater than necessary*," to comply with the purposes set out in § 3553. 18 U.S.C. § 3553(a).

A consideration of the § 3553 sentencing factors calls for a sentence below the Guidelines range. First, Garza's codefendant, Sanchez, who, as noted above, was the leader of this conspiracy and more culpable than Garza, received a sentence of 218 months. It would be an unwarranted disparity for Garza to serve 360 months or more while his more culpable codefendant served far less. While disparity is usually considered on a nationwide basis under § 3553, there are cases in which disparity in sentences between codefendants in a single case is also a relevant consideration. *See United States v. Roth*, No. 05 CR 792 (N.D. Ill. March 11, 2008). Garza's sentencing range was significantly increased by the determination that he is a career offender. Had this determination not been made, Garza would have an offense level of 30 and a criminal history of Category III with a resulting Guideline range of 121-151 months. The record shows that, while he qualifies under Guideline 4B1.1, Garza is not the typical career offender. Both narcotics offenses that qualify Garza for that classification occurred over nineteen years ago, when Garza was 18 years old. Since serving his sentence,

5

Garza, who is now 37 years old, has maintained a good record of employment and has not been convicted of any further criminal activity. Social Security records show that Garza has earned money and paid taxes every year between 1998 and 2006. Garza has also provided financial support to his children, taken out an insurance policy and owned a home. The numerous letters received on Garza's behalf paint a picture of a caring family man who, but for the instant offense, had turned his life around.

## CONCLUSION

For the foregoing reasons, the Court will depart from the Guideline range suggesting a career offender sentence. A sentence at the low end of the Guideline range based on an offense level of 30 and a criminal history category of III, reflecting his previous convictions without the career offender status, meets the sentencing goals of § 3553. Garza is sentenced to a term of 121 months imprisonment on Count I, 121 months on Count II, and 120 months on Count III, to run concurrently. Defendant shall serve a term of supervised release of 5 years on Count I, 3 years on Count II and 3 years on Count III, to run concurrently. This sentence, based on the foregoing, reflects the nature and circumstances of the offense and the history and characteristics of the Defendant.

Dated: 12-4-08

JOHN W. DARRAH
United States District Court Judge